(29 Misc. Rep. 614.)

### KIRWAN v. BARNEY.

(Supreme Court, Appellate Term.  November 29, 1899.)

1. REAL-ESTATE BROKERS—RIGHT TO COMMISSIONS.

   A broker produced to a vendor a purchaser willing to buy on terms fixed by him, in the person of a club organization, by introducing an officer, who attended to close the sale. The vendor refused to execute the sale unless the officer produced authority to contract for the club, which he was unable to do. *Held* that, the vendor's refusal to contract with such officer being justifiable, he was not liable for the broker's commissions.

2. CLUBS—POWERS OF TRUSTEES—PURCHASE OF REALTY.

   A club, at a meeting of its members, directed its president to purchase realty for a club building site. Subsequently the trustees authorized the chairman of the site committee to purchase a site, on different terms. *Held* that, the power conferred by the club being superior to that of the trustees, the chairman of the site committee had no authority to purchase the site.

Appeal from city court of New York, general term.

Action by John P. Kirwan against Charles T. Barney. From a judgment for plaintiff, defendant appealed to the general term of the city court, and from an order of that court reversing the judgment and ordering a new trial (57 N. Y. Supp. 812), plaintiff appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVEN-TRITT, JJ.

Deyo, Duer & Bauerdorf, for appellant.
John Vernon Bouvier, for respondent.

FREEDMAN, P. J.　This action was brought to recover commissions which the plaintiff claimed to have earned by negotiating a sale for the defendant of certain property in the city of New York. Upon the trial, the jury rendered a verdict in favor of the plaintiff for the amount claimed.　Upon appeal to the general term of the city court, the judgment was reversed, and a new trial ordered; and from that determination the plaintiff appeals to this court, stipulating that judgment absolute may be entered against him if he is unsuccessful.

The plaintiff claims to have produced to the defendant a purchaser, ready, able, and willing to buy the defendant's property upon the terms fixed by him, in the person of an organization known as the West End Club, by introducing to the defendant the officers of said club, and that upon May 28, 1895, one Mr. Arnheim, then chairman of the building-site committee of the club, attended at the office of the defendant with a view to closing the trade by executing an agreement of purchase.　It is undisputed that at this meeting Arnheim produced nothing to show that he was in any way authorized to contract for or on behalf of the club, and that he refused to enter into a contract in his individual capacity, or in any other way than as "chairman of the building-site committee of the West End Club."　The defendant expressed an entire willingness to execute a contract of sale to and with Arnheim as an individual, or with him in a representative capacity, if Arnheim would produce authority from the club to contract in its behalf. This Arnheim did not attempt to do, and neither does it appear that he had in fact such authority.　It appears that on the 15th of May, 1895, a general meeting of the members of the club was called and held, at which meeting the following resolution was passed:

"That this club purchase the premises for its club building on the northwest corner of Central Park West and 75th St., at the price of $105,000, and that the president of the club is hereby directed to negotiate for such purchase and enter into a contract therefor on such terms as he shall consider wise and for the best interests of the club, and employ counsel for the examination of the title thereto, and thereafter shall receive in his own name, as president aforesaid, a warranty deed, with full covenants, conveying to him the premises as such president, and to his successors."

Subsequently, and on May 26, 1895, the board of trustees held a special meeting, at which the following resolution was passed:

"That the chairman of the site committee be authorized to buy lots at $105,-000, with the understanding that he obtains a second mortgage of at least $25,000 on the proposition originally made."

Mr. Arnheim was not the president of the club in May, 1895; and, so far as appears from the record, neither of the foregoing resolutions had been rescinded upon May 28, 1895, the time of the final meeting between Arnheim and the defendant.　These resolu-

tions are radically different in their directions and provisions, and there is nothing in the constitution and by-laws of the club from which it can be gathered that the board of trustees had any right or authority or could exercise any functions independently, and in opposition to the action of the members of the club taken at a general meeting thereof. Assuming—and there is nothing appearing to the contrary—that both meetings were legally called and held, the authority conferred by a vote of the members of the club, in view of the powers conferred upon the board of trustees by its constitution, was superior and (unless rescinded) paramount to any resolution, relating to the same subject-matter, passed by a vote of the board of trustees. It follows, therefore, that upon May 28, 1895, the chairman of the site committee of the West End Club (Mr. Arnheim) had no valid authority to execute an enforceable contract for and on behalf of the club. The defendant had previously given ample notice to Mr. Arnheim, with whom the negotiations regarding the purchase of the property had been conducted, that authority from the club, evidenced by a proper resolution, directing its officers to execute the contract in the name of the club and affix its seal thereto, would be required by him; and it was therefore incumbent upon the club to produce such authority, before the defendant could be put in default by refusing to execute a contract, binding upon and enforceable against him, with one who possessed none of the indicia, and apparently was without authority to bind the proposed vendee, and the refusal of the defendant to accept a contract signed by Arnheim as "chairman of the site committee" was, under all the facts and circumstances in this case, justifiable. "As long as the vendor insists upon something he has a right to insist upon as a condition of sale, and to which the vendee refuses to assent, in consequence of which disagreement the vendee refuses to enter into an enforceable contract of sale, it cannot be held that the broker has procured a complete meeting of the minds of the vendor and vendee." Bennett v. Egan, 3 Misc. Rep. 421, 23 N. Y. Supp. 154. There are several other equally strong and fatal reasons why the judgment herein cannot be sustained, but which it is unnecessary to refer to. The order of the city court must be affirmed.

Order of the general term of the city court affirmed, and judgment absolute rendered against the plaintiff, with costs. All concur.